UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| DAVID HARMON, *et al.*, *individually and on behalf of all similarly situated*, | |
| Plaintiffs, | No. 1:22-cv-06150 |
| v. | |
| AMERICAN HONDA MOTOR CO., INC., | OPINION |
| Defendant. | |

---

**APPEARANCES**:

Ross H. Schmierer
KAZEROUNI LAW GROUP, A.P.C.
3000 Atrium Way, Suite 200
Mount Laurel, NJ 08054

Donovan Bezer
LAW OFFICE OF DONOVAN BEZER
30 Park Avenue
Lyndhurst, NJ 07071

    *On behalf of Plaintiffs and the Proposed Class*.

Michael L. Mallow
SHOOK, HARDY, & BACON, L.L.P
2049 Century Park East, Suite 3000
Los Angeles, CA 90067

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

## INTRODUCTION

This matter comes before the Court on Defendant American Honda Motor Co., Inc.'s ("Defendant") Motion to Compel Arbitration. (ECF No. 7). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons stated herein, Defendant's Motion is **GRANTED**.

### I. FACTUAL BACKGROUND

Between July 2018 and June 2021, Plaintiffs David Harmon, Ivan Kosin, and Matthew Kosin (collectively, "Leasing Plaintiffs," and together with Plaintiff Shirley Dunn, "Plaintiffs") entered into automobile lease agreements with several of Defendant's franchised dealers. (Compl., ECF No. 1, ¶¶ 54, 64, 69). Plaintiff Shirley Dunn entered into an automobile purchase agreement with one of Defendant's franchised dealers on June 16, 2021. (ECF No. 1, ¶ 59).

The lease agreements signed by Leasing Plaintiffs and the purchase agreement signed by Plaintiff Dunn included arbitration provisions.[1] The provisions in the lease agreements contained the following language:

> **52. ARBITRATION:**
>
> **PLEASE READ THIS ARBITRATION PROVISION CAREFULLY TO UNDERSTAND YOUR RIGHTS. BY ELECTING ARBITRATION, YOU AGREE THAT ANY CLAIM THAT YOU MAY HAVE IN THE FUTURE MUST BE RESOLVED THROUGH BINDING ARBITRATION. YOU WAIVE THE RIGHT TO HAVE YOUR DISPUTE HEARD IN COURT AND WAIVE THE RIGHT TO BRING CLASS CLAIMS. YOU UNDERSTAND THAT DISCOVERY AND APPEAL RIGHTS ARE MORE LIMITED IN ARBITRATION.**

---

[1] Although not attached to the Complaint, the lease and purchase agreements are implicitly relied on by Plaintiffs in their claims. Defendant attached the agreements to its Motion as exhibits, (Exhs. A–D, ECF Nos. 7-3–7-6), and Plaintiffs do not dispute—and indeed, confirm—their authenticity by citing to Defendant's exhibits in their Response. (*See e.g.*, Plas.' Br., ECF No. 13 at 5, 12, 15) (citing to the lease and purchase agreements attached to Defendant's Motion).

> Arbitration is a method of resolving a claim, dispute or controversy without filing a lawsuit. By agreeing to arbitrate, the right to go to court is waived and instead claims, disputes or controversies are submitted to binding arbitration. This provision sets forth the terms and conditions of our agreement. **YOU** and **HONDA** agree and acknowledge that this Lease affects interstate commerce and the Federal Arbitration Act ("FAA") applies.
>
> By signing the Arbitration Consent, **YOU** elect to have disputes resolved by arbitration. **YOU**, **HONDA** or any involved third party may pursue a Claim. "Claim" means any disputes between **YOU**, **HONDA,** or any third party relating to your account, this lease, or our relationship, including any application, the Vehicle, its performance and any representations, omissions or warranties.
>
> *********************************************************
>
> **HONDA** means Lessor, Dealer, Honda Lease Trust, American Honda Finance Corporation (AHFC) American Honda Motor Co., Inc., Honda Finance Exchange, Inc., Acura Financial Services (AFS), Honda Financial Services (HFS), parents, subsidiaries, predecessors, successors, assignees, and officers, employees, representatives and agents.
>
> **YOU** means Lessee and Co-Lessee to this Lease.

(Exhs. A–C, ECF Nos. 7-3–7-5 at 3, 7) (emphasis in original). The agreements also contained a

separate acknowledgement of the arbitration provision, which Leasing Plaintiffs initialed:

> **15. ARBITRATION**
> The parties agree that any unresolved disputes shall be submitted to arbitration in accordance with the Arbitration clause (Section 53). By initialing this Section, I am confirming that I have read this Section and the Arbitration clause, including the method of opting out of arbitration.

(Exhs. A–C, ECF Nos. 7-3–7-5 at 2, 3).

Plaintiff Dunn's purchase agreement similarly contained an arbitration clause that

provided:

> **AGREEMENT TO ARBITRATE ALL CLAIMS. READ THE FOLLOWING PROVISION CAREFULLY, IT LIMITS YOUR RIGHTS, AND WAIVES THE RIGHT TO MAINTAIN A COURT ACTION, OR TO PURSUE A CLASS ACTION IN COURT AND IN ARBITRATION**
>
> The parties to this agreement agree to arbitrate all claims, disputes, or controversies, including all statutory claims and any state or federal claims ("claims") that may

3

arise out of or relating to this agreement and the sale or lease identified in this agreement. **By agreeing to arbitrate the parties understand and agree that they are giving up their rights to use other available resolution processes, such as a court action or administrative proceeding, to resolve their disputes.**

*****************************************************

**THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT. THIS ARBITRATION PROVISION LIMITS YOUR RIGHTS, AND WAIVES THE RIGHT TO MAINTAIN A COURT ACTION OR PURSUE A CLASS ACTION IN COURT OR IN ARBITRATION. PLEASE READ IT CAREFULLY PRIOR TO SIGNING.**

(Exh. D, ECF No. 7-6 at 3) (emphasis in original). Defendant brings its Motion to Compel Arbitration (ECF. No. 7) pursuant to the above provisions.

Prior to entering these agreements, Plaintiffs viewed the "Monroney stickers" attached to their vehicles listing charges for "Destination and Handling" ranging from $930.00 to $1,175.00, believing these fees to represent Defendant's costs to deliver the vehicles to their respective dealerships.[2] (ECF No. 1, ¶¶ 56-57, 61–62, 66–67, 71–72).

Plaintiffs allege that Defendant, by neglecting to itemize or disclose the metric used to calculate the fees, arbitrarily inflates the purchase prices of its vehicles at the expense of New Jersey consumers. (ECF No. 1, ¶¶ 88–104). They allege that such conduct constitutes deceptive and unconscionable business practices in violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. STAT. ANN. § 56:8-1, *et seq.*, and has resulted in Defendant's unjust enrichment. (ECF No. 1, ¶¶ 88-104). Accordingly, they brought this suit.

---

[2] The Automobile Information Disclosure Act of 1958 ("AIDA"), 15 U.S.C. §§ 1231–1233, requires that automobile manufacturers affix a label disclosing, among other information, "the amount charged, if any, to such dealer for the transportation of such automobile to the location at which it is delivered to such dealer. . . ." 15 U.S.C. § 1232(f)(3). These labels are often called "Monroney stickers." *See, e.g., Weston v. Subaru of Am., Inc.*, No. 20-05876, 2022 WL 1718048, at *1 n.2 (D.N.J. May 26, 2022).

On October 18, 2022, Plaintiffs initiated this putative class action, alleging (i) violations of the NJCFA and (ii) common law unjust enrichment. (ECF No. 1, ¶¶ 88-104). On December 14, 2022, Defendant filed the present Motion to Compel Arbitration, along with a concurrent Motion to Dismiss. (ECF Nos. 7, 8). Plaintiff filed a Response, (ECF No. 13), to which Defendant replied. (ECF No. 15).

## II.     LEGAL STANDARD

Arbitration provisions are commonplace in consumer contracts and involve the waiver of a party's right to have their claims and defenses litigated in court. *See, e.g.*, *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 309 (N.J. 2014). The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, requires that courts "place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The FAA strongly favors the enforcement of arbitration agreements. *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020).

The Third Circuit has adopted a two-step test for assessing motions to compel arbitration. *See Kirleis v. Dickie, McCarney & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). To grant a motion under this framework, a court must determine that: (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the agreement's scope. *Id.* In some cases, a court must consider whether the parties agreed to arbitrate using the traditional Rule 12(b)(6) standard without discovery, but in others, it must use the Rule 56 summary judgement standard after some discovery. *E.g., Matczak v. Compass Grp. USA, Inc.*, No. 21-20415, 2022 WL 557880, at *1–3 (D.N.J. Feb. 24, 2022). To determine which standard is appropriate, the Third Circuit has articulated the following framework:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable

> arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (citations and quotations omitted). This bifurcated standard is the result of an intent to balance the competing purposes of the FAA, which aims to foster "efficient and speedy dispute resolution" while upholding the "significant role courts play in interpreting the validity and scope of contract provisions." *Id.* at 773. Ultimately, "[t]he centerpiece of that framework is whether the existence of a valid agreement to arbitrate is apparent from the face of the complaint or incorporated documents." *Id.* at 774–76.[3]

Applying the *Guidotti* standard here, the appropriate legal framework is Rule 12(b)(6) because, as explained below, *see infra* Part III, it is apparent based on documents implicitly relied upon in Plaintiffs' Complaint that their claims are subject to an enforceable arbitration clause. *See id.* at 776; *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that courts may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a [Rule 12(b)(6)] motion . . . if the plaintiff's claims are based on the document"). Plaintiffs do not dispute that they entered into the agreements, that the agreements bear their signatures, the terms set forth therein, or any other material issues. Rather, they assert only legal challenges as to the enforceability of the arbitration provisions. Therefore,

---

[3] Plaintiff's argument that the standard of review for a motion to compel arbitration is the same standard applied for summary judgment is incorrect and the case law upon which they rely is superseded by *Guidotti*. (*See e.g.* Plas.' Br., ECF No. 3).

to the Court can consider the agreements without converting the Defendant's motion to dismiss into a motion for summary judgment. *See N.H. Ins. Co. v. Dielectric Commc'ns., Inc.*, 872 F. Supp. 2d 458, 461 (E.D. Pa. 2012); *see* FED. R. CIV. P. 12(d).

When considering a motion under the Rule 12(b)(6) standard, a court must accept the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). Through this lens, the court then conducts a three-step analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Next, the court should identify and disregard those allegations that, because they are no more than "the-defendant-unlawfully-harmed-me accusation[s]," are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678; *Malleus*, 641 F.3d at 563. Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

On such a motion, the court may only consider the facts alleged in the pleadings, any attached exhibits, and any matters of judicial notice. *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). The court may also consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion . . . if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp.,* 998 F.2d at 1196. If any other matters outside the pleadings are presented to the court, and the court does not exclude

those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. FED. R. CIV. P. 12(d).

### III. DISCUSSION

For the reasons that follow, the Court concludes that (a) the arbitration clauses in the parties' lease and purchase agreements are valid and enforceable, and (b) although the arbitrability of Leasing Plaintiffs' claims must be left to an arbitrator, Plaintiff Dunn's claims are within the scope of the clause. Accordingly, Defendant's Motion is granted.

#### A. The Arbitration Agreements Are Valid.

The Court first addresses whether there is a valid arbitration agreement. As a preliminary matter, because state contract law principles determine whether a valid arbitration agreement exists, and Plaintiffs acquired their vehicles in New Jersey, the parties agree that New Jersey law governs this issue. (ECF No. 13 at 4; ECF No. 15 at 2). Under New Jersey law, "[a]n enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms." *Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1180 (N.J. 2016). Thus, "there must be a meeting of the minds for an agreement to exist before enforcement is considered." *Skuse v. Pfizer, Inc.*, 236 A.3d 939, 949 (N.J. 2020). With respect to determining whether there was a meeting of the minds for an arbitration agreement, the New Jersey Supreme Court has stated—

> [F]or any waiver-of-rights provision to be effective, the party who gives up rights must have full knowledge of his legal rights and intent to surrender those rights . . . . Our jurisprudence has stressed that when a contract contains a waiver of rights—whether in an arbitration or other clause—the waiver must be clearly and unmistakably established. . . . Our case law thus requires that a waiver-of-rights provision be written clearly and unambiguously.

*Id*. (citations and quotations omitted).

The arbitration clauses signed by Leasing Plaintiffs plainly meet this standard. The clauses identify the parties bound by the agreement,[4] the types of disputes subject to arbitration,[5] the process for initiating arbitration,[6] and the process to opt out of the arbitration clause.[7] (Exhs. A–C, ECF Nos. 7-3–7-5 at 3, 7). Leasing Plaintiffs not only initialed the pages of the lease agreements containing the full arbitration clauses, but also initialed additional acknowledgements of the provision in Section 15 of their agreements, affirming that they read the full arbitration provisions. (Exhs. A–C, ECF Nos. 7-3–7-5 at 2, 3).

The arbitration clause in the purchase agreement signed by Plaintiff Dunn also plainly meets this requirement. Though the clause does not specifically identify Defendant by name, it clearly and unambiguously communicates in bold text that, by signing, Plaintiff Dunn agreed to arbitrate "all claims, disputes, or controversies, including all statutory claims and any state or federal claims . . . that may arise out of or relating to this agreement . . . ." (Exh. D, ECF No. 7-6 at 3). The provision was accompanied by multiple bold, capital-lettered warnings explaining that signing the clause limits the signatory's rights and instructing the signatory to read the text carefully. (Exh. D, ECF No. 7-6 at 3).

Though Plaintiffs attempt to evade the clauses by claiming that Defendant is not a signatory to the agreement, American Honda Motor Co. is clearly and specifically identified by name as a

---

[4] "**HONDA** means . . . American Honda Motor Co. . . . YOU means Lessee . . . ." (Exhs. A–C, ECF Nos. 7-3–7-5 at 3,7).

[5] "[A]ll claims, disputes, or controversies, including all statutory claims and any state or federal claims . . . that may arise out of or relating to this agreement and the sale or lease identified in this agreement." (Exhs. A–C, ECF Nos. 7-3–7-5 at 3,7).

[6] "**YOU** or **HONDA** may select arbitration with American Arbitration Association, JAMS or National Arbitration and Mediation. Contact these sponsors for their rules. The hearing will be in the federal district where YOU reside. If agreed, it may be by telephone or written submissions." (Exhs. A–C, ECF Nos. 7-3–7-5 at 3,7).

[7] "**YOU** may opt out within 30 days of signing this Lease by sending a signed, written notice to **HONDA** . . . ." (Exhs. A–C, ECF Nos. 7-3–7-5 at 3,7).

party to the arbitration provisions in the lease agreements, clearly indicating Plaintiffs' intent to arbitrate claims against it and rendering their argument unpersuasive. (Exhs. A–C, ECF Nos. 7-3–7-5 at 3,7) ("**HONDA** means . . . American Honda Motor Co") (emphasis in original); *Haskins v. First Am. Title Ins. Co.*, 866 F. Supp. 2d 343, 348 (D.N.J. 2012) ("Under New Jersey law, a non-signatory may be bound to an arbitration agreement under a . . . third-party beneficiary [theory]"); *Rieder Cmtys. v. N. Brunswick*, 546 A.2d 563, 566 (N.J. Super. Ct. App. Div. 1988) ("The standard applied by courts in determining third-party beneficiary status is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts."). Though Plaintiff Dunn argues and Defendant admits that it is not a signatory to the arbitration provision signed by Plaintiff Dunn, (ECF No. 7, at 8; ECF No. 13, at 5), the Court agrees that Plaintiff Dunn is nevertheless estopped from avoiding her obligation to arbitrate because her claims are plainly within the provision's scope and New Jersey courts have recognized the standing of non-signatory parties to compel arbitration based on equitable principles. Because Plaintiff Dunn's claims against Defendant arise directly out of her payment obligation under the purchase agreement, she is equitably estopped from avoiding her obligation to arbitrate under the same contract. *See EPIX Holdings Corp., v. Marsh & McLennan Cos.*, 982 A.2d 1194, 1200 (N.J. 2009) ("New Jersey law recognizes non-signatory standing to compel arbitration based on the principle of equitable estoppel . . . 'when the issues to be litigated are intertwined with the agreement containing the arbitration clause.'" (quoting *JLM Indus., Inc. v. Stolt–Nielsen, S.A.*, 387 F.3d 163, 178 (2d Cir. 2004)); *see also id.* at 1201 (collecting federal cases interpreting the Federal Arbitration Act accordingly).

Plaintiffs argue that the lease and purchase agreements containing the arbitration provisions are unconscionable and thus unenforceable, but they present no material facts to support these

assertions. (ECF No. 13 at 14–15). They allege in a conclusory fashion that contracts of adhesion are procedurally unconscionable, which not only falls short of the legal standard for determining unconscionability of arbitration agreements in New Jersey, but also need not be taken as true under Rule 12(b)(6). (ECF No. 13 at 14–15); *See Delta Funding Corp. v. Harris*, 912 A.2d 104, 111 (N.J. 2006) (listing four factors New Jersey courts must consider when asked to declare an arbitration agreement unconscionable); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429–30 (3d Cir. 1997) (explaining "a court need not credit either bald assertions or legal conclusions in a complaint when deciding a motion to dismiss") (quotations omitted).

Plaintiffs further allege that the clauses are substantively unconscionable because they permit Defendant to modify the agreement at any time, making them illusory promises. (ECF No. 13 at 15). Plaintiffs make no reference to the specific text of the agreement, and further neglect to mention that Defendant may only make such changes after providing notice and opportunity for customers to opt out. (Exhs. A–C, ECF Nos. 7-3–7-5 at 3, 7) ("**HONDA** reserves the right to make changes to this provision *after providing written notice and an opportunity to opt out*.") (emphasis added). These restrictions on Defendant's right to unilaterally modify the agreement render the agreement non-illusory, and thus enforceable. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 604 (3d Cir. 2002) (holding that a modification clause in an arbitration agreement was not an illusory promise because it required the defendant to provide written notice to employees and allowed employees to reject the change by discontinuing employment); *Singh v. Uber Tech., Inc.*, 67 F.4th 550, 563-64 (3d Cir. 2023) (holding that a delegation clause subject to "unilateral modification" by the defendants was not illusory because it required written notice to employees and employee consent).

**B. Leasing Plaintiffs' Claims Must Be Left to an Arbitrator; Plaintiff Dunn's Claims Are Within the Scope of the Arbitration Agreement.**

Having determined that the arbitration clauses are valid and enforceable, the Court turns to whether Plaintiffs' claims are within their scope. *See supra* Part II. Defendant first argues that this question must be left to an arbitrator for Leasing Plaintiffs' claims because their arbitration agreements contained delegation clauses, and that Plaintiff Dunn's claims are within the scope of the agreement. The Court agrees with Defendant as to both arguments.

1. <u>Arbitrability of Leasing Plaintiffs' claims must be left to the arbitrator.</u>

As a preliminary matter, the arbitration agreements signed by Leasing Plaintiffs contain delegation clauses that delegate this question to an arbitrator. Under the Federal Arbitration Act, parties may agree to have an arbitrator decide whether the parties agreed to arbitrate or whether their agreement covers a particular controversy. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 129 S. Ct. 524, 529 (2019). When a contract contains such an agreement, "a court may not override the contract" and thus possesses "no power to decide the arbitrability issue." *Id.* The arbitration clauses in the lease agreements here clearly provide that "[t]he arbitrator shall . . . decide all issues relating to the interpretation, construction, enforceability and applicability of [the arbitration provision]." (Exhs. A–C, ECF Nos. 7-3–7-5 at 3,7). "[U]nless the party opposing arbitration challenges 'the delegation provision specifically,' the district court 'must treat it as valid' and 'must enforce it' by sending 'any challenge to the validity' of the underlying *arbitration agreement* to the arbitrator." *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds,* 974 F.3d 386, 399 (3d. Cir. 2020) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2020)).

Attempting to escape the delegation clause, Leasing Plaintiffs rely on *Field Intel. Inc. v. Xylem Dewatering Sols. Inc.*, 49 F.4th 351, 357–58 (3d Cir. 2022). (ECF No. 13 at 12). In *Field*

*Intel.*, the court held that courts retain the power to determine issues of arbitrability where issues of contract formation or supersession call into question the existence of mutual assent. *Id.* Beyond unsuccessfully alleging unconscionability, *see supra* Section III.A, Leasing Plaintiffs have not alleged that the lease agreements lack mutual assent, nor have they specifically challenged the validity of the delegation provisions. As such, the issue of whether Leasing Plaintiffs' claims fall under the arbitration provisions is properly left to an arbitrator, rather than this Court.

2. Plaintiff Dunn's claims are within the scope of the arbitration agreement.

The purchase agreement signed by Plaintiff Dunn does not contain a delegation clause, so the Court must consider whether her claims fall within the scope of the arbitration agreement. The arbitration provision provides that the signatory agrees to arbitrate "all statutory claims and any state or federal claims ('claims') that may arise out of or relating to this agreement and the sale or lease identified in this agreement." (Exh. D, ECF No. 7-6 at 3). Plaintiffs claim that the allegedly misleading stickers affixed to their vehicles caused them to suffer ascertainable losses in the form of arbitrarily inflated destination fees. (ECF No. 1 at ¶ 99). Plaintiff Dunn's purported losses arose directly out of the purchase agreement which itemized in detail the costs that, by signing, she assented to paying. (Exh. D, ECF No. 7-6 at 2-3). As such, Plaintiff Dunn's claims must be compelled to arbitration.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Compel Arbitration, (ECF No. 7), is **GRANTED**. This matter is **STAYED** pending the results of arbitration. All other pending motions are therefore moot and are administratively terminated. An appropriate Order accompanies this Opinion.

**CHRISTINE P. O'HEARN**
**United States District Judge**